Bailey vs. The Champlain Mining & Prospecting Co. and another.

BAILEY, Respondent, vs. THE CHAMPLAIN MINING & PROSPECTING COMPANY and another, imp., Appellants.

*September 9 — September 23, 1890.*

*Corporations: Increase of capital stock: Irregularities cured by acquiescence: Fraud: Cancellation of stock.*

1. The owner of mines agreed with certain persons to form a corporation, they to put in $20,000, and he to put in the mines and to have one half of the stock issued. The $20,000 was furnished, and stock to that amount was issued to the parties furnishing it. By mistake the articles of incorporation fixed the whole capital stock at $20,000 instead of $40,000. To correct this mistake a resolution increasing the capital stock to $40,000 was adopted with the assent of all the stockholders. *Held*, that even if such resolution was adopted at a meeting of the directors instead of the stockholders, the assent and acquiescence of all the stockholders cured the irregularity; and the owner of the mines, having conveyed them to the corporation in execution of the original agreement, was entitled to certificates of stock to the amount of $20,000.

2. A court of equity may, in a suit by a stockholder, adjudge that stock issued by a corporation is void on the ground of fraud.

APPEAL from the Superior Court of *Milwaukee* County. The facts are sufficiently stated in the opinion. The defendant corporation and the defendant *P. C. Clausen* appeal from the judgment in favor of the plaintiff.

For the appellants there was a brief by *Turner & Timlin,* and oral argument by *W. J. Turner.* They contended, *inter alia,* that the proceedings by which it was attempted to in-

crease the capital stock in November, 1887, were not in conformity to the requirements of the statute. The meeting was a meeting of the *board of directors;* but the increase must be by the stockholders, not by the directors. Cook, Stock, sec. 285; *Finley S. & L. Co. v. Kurtz,* 34 Mich. 89; *Railway Co. v. Allerton,* 18 Wall. 233; *Scovill v. Thayer,* 105 U. S. 143; *Winters v. Armstrong,* 37 Fed. Rep. 508. All the parties are charged with knowledge that new stock could not be issued without being paid for; that the stock could not be increased except by the proceedings pointed out by the statute. *Crandall v. Lincoln,* 52 Conn. 73. As against the corporation, its corporate existence and standing cannot be modified except in compliance with the statute. As against the corporation itself, in matters affecting its existence, the doctrine of estoppel cannot be invoked. Under sec. 1761, R. S., a corporate meeting which had not been regularly called could be held only when preceded by written consent of all the stockholders upon the records.

The trial court has determined that this corporation, which was legally organized with a capital limited to $20,000, all of which had been regularly paid for, must consider its articles amended and issue to the plaintiff $20,000 worth of its capital stock, because, before it had corporate existence, there was an agreement between the promoters — only a portion of whom are at present stockholders — that one of them should have a half interest in the property. It enforces by its judgment the specific performance of a contract between the plaintiff, Iversen, and Todell, to which the corporation, *Clausen,* and Dorner were not parties. This is error. *Carmody v. Powers,* 60 Mich. 26; 1 Morawetz, Corp. secs. 434, 454; 2 id. secs. 681, 683, 761; *Wood v. Union G, C. B. Asso.* 63 Wis. 9; Cook, Stock, secs. 279, 281, 284; *Avery v. Ryan,* 74 Wis. 591.

It was also error to adjudge that the amendment in January, 1889, increasing the capital stock from $20,000 to

$41,000 was void.   The remedy to declare void the amend-
ment is not in a court of equity at the suit of an individual
stockholder.   It is in an action at law by the state.   2
Morawetz, Corp. secs. 938, 1040, 1041; High, Ex. Leg. Rem.
sec. 660; *Strong v. McCagg,* 55 Wis. 624.

For the respondent there was a brief by *Quarles, Spence
& Quarles* and *Frank M. Hoyt,* and oral argument by
*Charles Quarles.*   They argued, among other things, that
the meeting in November, 1887, at which the capital stock
was increased from $20,000 to $40,000, though described as
a *directors'* meeting, was in fact a *stockholders'* meeting, and
is certified to have been such by the defendants Todell, as
president, and Iversen, as secretary, in their certified copy
of the resolution filed with the register of deeds.   The di-
rectors comprised *all* the stockholders except F. C. Bailey,
father of the plaintiff, who acquiesced in what was done at
that meeting.   And what was then done was acquiesced in
by all until in January, 1889.   If the resolution for the in-
crease was passed, as is claimed, at a *directors'* meeting, this
long-continued acquiescence by the stockholders would val-
idate the act.   Cook, Stock (2d ed.), 285; *Railway Co. v.
Allerton,* 18 Wall. 236; *Scovill v. Thayer,* 105 U. S. 149;
*Poole v. West Point B. & C. Asso.* 30 Fed. Rep. 513–515;
*Kansas City H. Co. v. Harris,* 51 Mo. 464; *Kansas City H.
Co. v. Hunt,* 57 id. 126.

The trial court does not attempt to enforce specific per-
formance, against the corporation and stockholders, of the
contract between plaintiff, Iversen & Todell.   That con-
tract was *executed.*   It was in effect a contract to subscribe
for the stock, and was completed by payment,— the de-
fendants advancing the money and the plaintiff conveying
his mine.   The parties thereupon became *ipso facto* stock-
holders.   *Tanner v. Gregory,* 71 Wis. 490.   This relation
may be established by parol.   *Clark v. Farrington,* 11 Wis.
326; *Wyman v. Am. Powder Co.* 8 Cush. 168; Cook, Stock,

sec. 52; *Chaffin v. Cummings*, 37 Me. 76, 83. The preliminary agreement when acted on, the company being incorporated and the capital increased to comply with it, constituted the parties stockholders according to the terms of the agreement. 1 Morawetz, Corp. secs. 47, 56; *Athol M. H. Co. v. Carey*, 116 Mass. 473; *Buffalo & J. R. Co. v. Gifford*, 87 N. Y. 295, 299; *Marseilles L. Co. v. Aldrich*, 86 Ill. 504; *Minneapolis T. M. Co. v. Davis*, 40 Minn. 110; *Smith v. N. A. Mining Co.* 1 Nev. 423.

In a suit by a stockholder the court will, when necessary, determine questions of the validity or invalidity of corporate acts and of instruments issued, or purporting to be issued, by the corporation, as collateral and incident to the main questions to be decided and the principal relief prayed. Cook, Stock (2d ed.), sec. 288, note 3; *Winters v. Armstrong*, 37 Fed. Rep. 508; *Scovill v. Thayer*, 105 U. S. 147; *Veeder v. Mudgett*, 95 N. Y. 310; *Sutherland v. Olcott*, id. 93; *Eidman v. Bowman*, 58 Ill. 444.

ORTON, J. Only a general statement of the facts of this case need be made, to understand the full import of the decision. It is essentially a case on the merits, and no questions of law are involved which cannot be disposed of on elementary principles, and there is nothing complicated about the case. The parties were at issue on the facts, and the superior court adopted the facts and theory of the plaintiff rather than that of the defendants. According to the evidence for the plaintiff, the individual defendants, with the exception of the defendant F. C. Bailey, attempted to commit a gross fraud on the plaintiff through the officers of the corporation. According to the complaint, the facts are substantially as follows:

Prior to March, 1887, the plaintiff had discovered and located two valuable gold mines in Atturas county, territory of Idaho,— one called the "Champlain Lode," and the other

the "Alabama Lode,"— and owned the first-named lode, and owned the last-named lode with one Stride, and had an interest in a lode called the "Hattie Lode" with one Crippen. He was without the means to test, improve, and operate said mines, and he applied to the defendants Todell, Iverson, and Hansen, and proposed to them to form a stock corporation to test and develop the same, about the 19th day of March, 1887, and proposed to unite with them in forming such a corporation under the laws of this state. They acceded to his proposition, and furnished him at once with $1,000, to drive a shaft or tunnel to test said lodes. Being satisfied with such test and the prospect, they entered into articles of agreement by which they and their associates were to furnish the sum of $20,000, including said $1,000, as the cash working capital of the corporation to be formed, and the plaintiff was to receive for the property one half of the stock to be issued. The said $20,000 cash capital was so furnished, and stock of that amount was issued to the parties so furnishing it in their proper proportion. There was a mistake made in the articles filed to obtain such incorporation, by making the whole capital stock only $20,000, instead of $40,000, the amount necessary to give said parties their proper amount of stock for the money capital so furnished by them of $20,000, and to give the plaintiff his proper amount of stock for his property in said mines so to be conveyed to the corporation. The mines were developed by the use of said money, and they were found to be of very great value. To correct said mistake in the amount of the capital stock, and make it $40,000, instead of $20,000, a meeting of the stockholders was held about the 28th day of November, 1887, at which meeting the plaintiff was represented by proxy, and they unanimously voted to so amend and correct the articles of the corporation, and make the whole capital thereof the sum of $40,000, and a resolution to that effect was adopted, and

the plaintiff supposed that said resolution so increasing the stock of the corporation was duly filed in the office of the secretary of state. The plaintiff was recognized by the defendants and other stockholders at said meeting as having and owning one half of the whole stock, and his vote for that amount, viz., the sum of $20,000, was duly received and counted; but his shares of said $40,000, amounting in the aggregate to the sum of $20,000, to which he was entitled for said property, have never been issued and delivered to him, and, on his demand of the same from the secretary of the corporation, it was refused. In January, 1889, the defendants and other stockholders called a meeting, without giving the plaintiff any notice thereof, and without his knowledge, at which, by a resolution, the capital stock of the corporation was increased to $41,000, and said resolution was recorded in the office of the register of deeds of Milwaukee county, and a copy thereof was filed in the office of the secretary of state. This is charged in the complaint as a conspiracy to cheat and defraud the plaintiff. In a short time thereafter the defendants proposed to the plaintiff that if he would consent to an increase of the capital stock to $60,000 he should receive, as one half of the stock as it was then fixed, the sum of $20,000, thus giving him $20,000 of stock, and taking to themselves stock to the amount of $40,000. The defendants and other stockholders, together with the president, secretary, and a majority of the directors of the corporation, conspiring to cheat and defraud the plaintiff, caused a mortgage on the property of the corporation to be made to one Landott, as trustee, to secure the bonds of the company of $10,000 to be thereafter issued, and to be recorded in the county where the mines are situated by an agent of Landott and the company, who had notice of the injunction in the case. None of the bonds secured by said mortgage have been issued, and no money through such source is needed by the company.

The superior court found the foregoing facts to be substantially true, and, in accordance with the prayer of the complaint, adjudged that said last increase of the capital stock and the said mortgage were void, and that the plaintiff is entitled to stock at the par value of $20,000, and to have the president and secretary of the company issue to him certificates for said 2,000 shares of the stock thereof, as one half of the whole stock of $40,000. The evidence appears to have warranted such finding and judgment.

The learned counsel of the appellants contend that the court erred in holding that the capital stock was duly increased from $20,000 to $40,000, and such increase was made to conform to the original agreement. The fact that the defendants issued to themselves and other stockholders $20,000 in itself implies that the plaintiff should have an equal amount of stock for his property. The mistake was apparent on the face of the transaction, and it was corrected by the assent of all of the stockholders. It may have been corrected by the directors in form, but the directors were all shareholders, and they all assented to it and acquiesced in it. This cured any irregularity, if any, in increasing the stock. *Railway Co. v. Allerton,* 18 Wall. 233; *Scovill v. Thayer,* 105 U. S. 143; *Poole v. West Point B. & C. Asso.* 30 Fed. Rep. 513. The plaintiff was entitled to certificates of stock of $20,000, because such was the original agreement, and he deeded to the corporation the mines in execution of it on his part.

Some other technical objections to the judgment are made, based on the want of power in the court to change the stock in a corporation or to set it aside, but it must not be forgotten that this is a case of fraud as well as of mistake, and a court of equity considers the conduct of the parties in adjudging things done by them void for fraud. Fraud vitiates everything. The authorities cited by the learned counsel of the appellant are inapplicable to such a case.

Where can the plaintiff have a remedy for such wrongs, if not in the courts? The power of a court of chancery is plenary in such a case. We think the judgment is correct and just, and that no sound legal principle is violated by it.

*By the Court.*— The judgment of the superior court is affirmed.

